**Alfred OCHOA et al., Plaintiffs,**

v.

**AMERICAN OIL COMPANY, Defendant.**

**Civ. A. No. 70–G–53.**

United States District Court,
S. D. Texas,
Galveston Division.

Feb. 11, 1972.

Gabrielle K. McDonald, of McDonald & McDonald, Houston, Tex., for plaintiffs.

John B. Abercrombie, L. Chapman Smith, of Baker & Botts, Houston, Tex., and James A. Sullivan, III, Chicago, Ill., of American Oil Co., for defendants.

## MEMORANDUM AND ORDER

NOEL, District Judge.

This is a suit, pleaded as a class action, in which it is alleged that defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 2000e et seq. (1964). Plaintiffs contend that they were discharged from employment for impermissible reasons, and ask for a declaratory judgment that certain practices, policies and customs of defendant are violative of the Act. The relief sought is an injunction against allegedly unlawful practices, as well as damages in the form of back pay. Having answered, defendant has made timely demand for trial by jury, contending that such is guaranteed by the Seventh Amendment.[1] Plaintiffs have moved that defendant's demand for jury trial be stricken.

The statute is silent as to jury trial.[2] However, "(t)he right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts." Jacob v. New York City, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942). Mindful of this

---

1. The Seventh Amendment to the Federal Constitution provides that in "(s)uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved. . . ." U.S.Const. Amend. VII.

2. The legislative history on the point is equivocal. See Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232, 1239 fn. 5 (N.D.Ga.1968), rev'd on other grounds 421 F.2d 888 (5th Cir. 1970).

duty, the Court has not desired to rule on the motion at bar without deliberate examination of a question which has not to date received thorough consideration by any court of higher authority. Accordingly, the Court has requested extensive briefing on the point, a task which has been commendably discharged by both counsel.

■ When a new cause of action is created by Congress, and the statute is silent as to the mode of trial, the jury trial issue is determined by analogizing the new action to its historical counterpart. 5 Moore's Federal Practice § 38.11 (7). Similarly, if the statute by its terms or clear intent excludes the jury or diminishes its function, its constitutionality is measured by the same standard. Cf. Parsons v. Bedford, Breedlove & Robeson, 28 U.S. (3 Pet.) 432, 448, 7 L.Ed. 732 (1830). If the historical analogue was tried to a jury at English common law in 1791, then it is triable by right to a jury today in contemplation of the Seventh Amendment. United States v. Wonson, 28 F.Cas. p. 745, No. 16,750 (C.C.D.Mass.1812); Capital Traction Company v. Hof, 174 U.S. 1, 19 S.Ct. 580, 43 L.Ed. 873 (1899); Slocum v. New York Life Insurance Company, 228 U.S. 364, 33 S.Ct. 523, 57 L.Ed. 879 (1913).

■■ The modern action and its ancient equivalent need not be identical. "In a just sense, the amendment may well be construed to embrace all suits, which are not of equity and admiralty jurisdiction, *whatever may be the peculiar form which they may assume to settle legal rights*." Parsons v. Bedford, Breedlove & Robeson, supra, 28 U.S. at 446 (emphasis added). Again in United States v. Jepson, 90 F.Supp. 983, 986 (D.N.J.1950), it was aptly stated that "when a federal statute embraces a common-law form of action, that action does not lose its identity merely because it finds itself enmeshed in a statute."

The right of action involved in the instant case was created by the Civil Rights Act of 1964, and the remedy is codified at 42 U.S.C. § 2000e–5(g), which provides in relevant part:

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice.)

In determining whether a common law cause of action is enmeshed in the statute set out above, it is instructive to examine the manner in which the problem has been solved in the context of other statutory causes of action.

United States v. Jepson, supra, was a suit by the Government to recover rents collected by defendants in excess of maximum legal rents promulgated by the Emergency Price Control Act of 1942, and for treble damages. As in the case at bar, the plaintiff argued that defendant had no right to a jury trial because the action was novel and of statutory origin. The Court rejected this approach, holding that the suit for the penalty was analogous to the common law action for debt and thus triable to a jury. As stated in United States v. Mundell, 27 F.Cas. p. 23, No. 15,834 (C.C.D.Va. 1795):

A distinction is sometimes taken between a suit at common law and a suit upon a statute, where the latter is grounded upon different principles from the former, in which case perhaps it may properly be said that the one is a trial at common law, the other upon the statute . . . . thus, in this case, though it be an action on the statute, it is an action of debt, which is a common law action, and will be tried in a common law manner. . . Whatever, therefore, the laws order

anyone to pay, that instantly become a debt which he hath before hand contracted to discharge. . . .

Cf. United States v. Mesna, 11 F.R.D. 86 (D.C.Minn.1950). See also Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012 (4th Cir. 1965), which was a suit brought by a union member against his union pursuant to the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 1412. He sought an injunction against suspension as well as damages for lost income and other injuries. In holding that trial by jury was proper, the Court stated:

> The right asserted is indeed one created by statute, but we do not agree that a jury trial is necessarily unavailable because the suit for damages is one to vindicate a statutory right. There is no cleavage between rights existing under common law and rights established by enacted law, where the relief sought is an award of damages.

350 F.2d 1018, discussed and deemed "persuasive" by Wisdom, J., in International Brotherhood of Boilermakers, Etc. v. Braswell, 388 F.2d 193 (5th Cir. 1968), certiorari denied 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854 (1968). See Paley v. Greenberg, 318 F.Supp. 1366 (S.D. N.Y.1970).

Olearchik v. American Steel Foundries, 73 F.Supp. 273 (W.D.Pa.1947), was an action to recover overtime compensation and liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. In holding the Seventh Amendment applicable to such a suit, the Court observed that "(n)otwithstanding that its virtue is now hidden behind the camouflage of a 'Civil action' ; still there it stands in the strength and dignity of pure logic, an action in assumpsit, on contract, at law." 73 F.Supp. at 280. Accord, Lewis v. Times Publishing Company, 185 F.2d 457 (5th Cir. 1950) (per curiam).

On the same reasoning, it has been held that an action by the United States to collect unpaid federal taxes, as distinguished from tax lien foreclosure, is triable by right to a jury, on the ground that a suit brought by the Crown to recover taxes was tried to a jury in the Court of Exchequer prior to 1791. Damsky v. Zavatt, 289 F.2d 46 (2nd Cir. 1961); see Note, 46 Minn.L.Rev. 643 (1962). *Damsky* was approved without "unqualified enthusiasm" in Gefen v. United States, 400 F.2d 476 (5th Cir. 1968), certiorari denied 393 U.S. 1119, 89 S.Ct. 990, 22 L.Ed.2d 123 (1969), where the Court of Appeals for this Circuit noted that "although we may wish to ignore certain outdated concepts of yore, our recourse to modern legal principles is restricted severely by the plain words of the Seventh Amendment." 400 F.2d at 479 fn. 5.

▉ Plaintiffs, on brief, accurately observe that racial or national origin discrimination in employment was not actionable at common law. It is obvious, of course, that Title VII, a "socially remedial statute", Georgia Power Company v. Equal Employment Opportunity Commission, 412 F.2d 462, 466 fn. 6 (5th Cir. 1969), is not merely declaratory of the common law. This, however, does not answer the proper and more narrow question, to wit: whether discharge of an employee (for any legally wrongful reason) would support an action for recovery of back pay tried to a jury at common law. If so, the issue of entitlement to back pay in the instant case is a "legal" issue. The point was made in Martin v. Detroit Marine Terminals, Inc., 189 F.Supp. 579, 582 (E.D.Mich.1960), where the Court, after noting that a suit for unpaid overtime compensation and liquidated damages under the Fair Labor Standards Act was analogous to the common law action of debt or assumpsit, stated:

> It, therefore, appears that the jury trial protected by the 7th Amendment goes only to those issues in an action at law which historically were triable to a jury in England prior to 1791. In other words, in determining the scope of the 7th Amendment with respect to one issue in a statutory action which is generally triable to a jury,

the test is *not* whether such action is more or less broadly analogous to an established common-law action, but rather whether such issue must, by analogy or because of historical considerations, be characterized as a 'legal' issue.

A. *Does the provision of Title VII which authorizes suit for back pay by an unlawfully dismissed employee embrace a common law action?* The remedies available to the wrongfully discharged servant at common law were three:

(1) Assumpsit on quantum meruit: the servant acquiesced in the contract's rescission by the wrongful act of the master, and sued on the quantum meruit for work actually performed. This remedy does not present a useful analogy because Title VII contemplates back pay for the period subsequent to discharge, and not merely recompense for services rendered.

(2) Indebitatus assumpsit: the servant waited until the termination of the period for which he was hired and then sued for the whole wage relying on the doctrine of constructive service. This remedy resembles Title VII back pay more closely than quantum meruit, in that damages accrue for the portion of the contractual period subsequent to discharge. Gandell v. Pontigny, 171 Eng. Rep. 119 (1816), was indebitatus assumpsit for work and labor, with the common money counts. Having contracted to serve a merchant for a stipend payable quarterly, plaintiff was discharged without sufficient cause on August 11, in the middle of the third quarter. Although he presented himself at the countinghouse the next morning prepared for duty, his services were declined. He sued for the remainder of the quarter's wage and prevailed on a jury verdict. Lord Ellenborough held that the action would lie. "Having served a part of the quarter and being willing to serve the residue, in contemplation of law he may be considered to have served the whole."

It would therefore appear that an action for debt by a discharged employee for the functional equivalent of backpay was maintainable at common law on the theory of constructive service and was tried to a jury. Indebitatus assumpsit, however, was vulnerable to criticism in that it excused the aggrieved employee from the duty to mitigate, thus encouraging him to remain idle until the expiration of the agreed term and the filing of the suit. For this reason, the action was gradually abandoned in most jurisdictions. 5 Corbin on Contracts § 1095 (1964). Cf. Goodman v. Pocock, 117 Eng. Rep. 577 (1850).

(3) Action for breach of contract by wrongful discharge: the wronged servant treated the contract as continuing and sued for breach by reason of the dismissal. This was the classic remedy and the one of which Crompton, J., in the House of Lords, stated that "I am not aware that [it] has ever been doubted. . . ." Emmens v. Elderton, 10 Eng. Rep. 606, 615 (1853). This action was deemed superior to those previously noted because it allowed compensatory damages for lost wages subsequent to the breach, but also imposed upon the plaintiff a duty to mitigate, thus discouraging windfall. That it, like the others, was tried to a jury cannot be questioned:

> It seems to me quite too late to question the principle upon which so many actions have proceeded in modern times; and which is, that after a dismissal, the servant or party employed may recover such damages as a jury may think the loss of the situation occasioned. If he has obtained, or is likely to obtain another situation, the damages ought to be less, or nominal, according to the real loss; and in such case the servant need not remain idle, in readiness to give services which cannot be wanted.

Emmens v. Elderton, supra, 10 Eng.Rep. at 614.

It appears, therefore, that the employee's remedies at common law are distinguished by the measure of damages. In the action for breach by wrongful discharge, a "deduction of the net amount of what the employee earned, or what

he might reasonably have earned in other employment of like nature, from what he would have received had there been no breach, furnished the ordinary measure of damages." 11 Williston on Contracts § 1358 (1968); 56 C.J.S. Master and Servant § 50. It is of decisive significance to the present inquiry to note that Title VII literally codifies the common law measure of damage for wrongful discharge. In relevant part, § 2000e–5(g) provides: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." As the Court of Appeals for the Sixth Circuit noted in St. Clair v. Local Union No. 515, 422 F.2d 128, 132 (6th Cir. 1969), the monetary measure of damages for wrongful discharge at common law is identical to the statutory measure provided by Title VII.

■ It clearly appears from this that the Title VII action for the unlawful employment practice of discriminatory discharge, 42 U.S.C. § 2000e–2(a) (1), finds its historical counterpart in the common law action for breach of contract by wrongful discharge, which was, of course, tried to a jury. Congress created a new substantive right—the right to be free from certain irrational classifications in employment—and could have provided for a solely equitable judicial remedy such as simple reinstatement, or for an exclusive administrative remedy which could include an award of back pay as under the National Labor Relations Act. See National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). In either case, the participation of a jury would obviously have been foreclosed. See Kastner v. Brackett, 326 F.Supp. 1151 (D.Nev.1971). Instead, as a remedy for vindication of the new right, Congress provided essentially an old form of action whereby the wronged employee might bring a civil action to recover his lost wages less interim earnings.[3] Although substantively of little more than antiquarian interest, the procedural significance of the chosen remedy is that the Seventh Amendment operates to guarantee trial by jury upon timely demand.

■ B. *Has plaintiff, by including in the complaint a prayer for injunctive relief as well as back pay, removed the action from the scope of the Seventh Amendment?* At the time of the adoption of that Amendment, its mandate to federal courts presented far fewer problems than today. At that period the separate jurisdictions of common law and

3. Plaintiffs contend that the action thus created is intended to correct an offense against the public interest rather than effect a private recovery. If true, it is not clear why this should suspend the operation of the Seventh Amendment. Additionally, there appear to be no objective standards for determining which actions are public in nature and which private. In holding that an action by the Secretary of Labor to enjoin violation of the Fair Labor Standards Act and to compel payment of withheld wages was not triable to a jury, the Court of Appeals was persuaded by the fact that the suit was "to redress a wrong done to the public good". Wirtz v. Jones, 340 F.2d 901, 905 (5th Cir. 1965). The *Wirtz* case construed Section 17 of the Act, under which the Secretary may seek injunctive relief as well as an order to pay over withheld minimum wage and overtime compensation. By contrast, it is well settled that an action by an employee in his own behalf under Section 16 of the Act, for withheld compensation and liquidated damages, is triable to a jury. Lewis v. Times Publishing Co., 185 F.2d 457 (5th Cir. 1950). This suggests that at least one characteristic of a "public" suit is that it be brought by a public official or a governmental agency. Cf. Porter v. Warner Holding Company, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); Hodgson v. American Can Co., 328 F.Supp. 261 (E.D. Pa.1971). By this criterion, the case at bar is not in the "public" category. But, cf. Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970), which involved a claim for back pay under 42 U.S.C. § 1983. For a discussion of the public-private distinction and its analytic vulnerability, see Note, The Right to Jury Trial under Title VII, 37 U.Chi. L.Rev. 167 (1969).

equity flourished. Each jurisdiction was equipped with its traditional fact-finding tool, the jury at law and the chancellor at equity. Since the jurisdictions of law and equity were to a large extent mutually exclusive, legal actions were tried at common law and equitable actions were tried in equity where special remedies were available. Because a given lawsuit would be tried either at common law or equity, depending upon its nature, the problem of overlapping fact-finding methods did not exist.

With the adoption of the Federal Rules of Civil Procedure in 1938, including Rule 2 providing that "(t)here shall be one form of action to be known as a 'civil action'", separate legal and equitable claims may be joined in the same action. Rule 18(a), Fed.R.Civ.P. That the Rules were not intended to expand nor contract jury trial was made explicit by Rule 38: "The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate."[4] Although the equity side and the law side of the federal trial courts were thus fused, we are still far from the time envisioned by Maitland "when lawyers will cease to inquire whether a given rule be a rule of equity or a rule of common law." Maitland, Equity 20 (1910).

In making that inquiry, it is well to remember that the jurisdiction of the equity courts of old was primarily dependent on the absence of an adequate remedy at law. Scott v. Neely, 140 U.S. 106, 110, 11 S.Ct. 712, 35 L.Ed. 358 (1891). If, under the circumstances, legal damages were sufficient to remedy the injury, the equity courts would refuse to grant relief, and the plaintiff would have to be content with trial of his case at law, where facts would be found by a jury. If, on the other hand, the injured party could only be made whole by injunction, or other equitable relief, he would take his case to the chancery courts where the facts were determined by the judge, or chancellor. Because of this historical setting, one of the most useful indicia of the legal-equitable nature of a contemporary civil action is the remedy requested in the pleadings. A request solely for equitable relief indicates a case traditionally triable in equity without the use of a jury. Likewise a request solely for a legal remedy characterizes the case as one which would have been tried at common law where the jury was available. As noted above, the back pay remedy provided by Title VII is the equivalent of damages at common law and jury trial is indicated—a result which is not altered by joinder of a prayer for equitable relief.

A case very close to point is Leimer v. Woods, 196 F.2d 828 (8th Cir. 1952). It involved a suit by the federal price administrator alleging a rent overcharge in violation of the Housing and Rent Acts of 1947. The complaint prayed for an injunction against further violations, restitution in favor of the tenants, and damages treble the overcharge in favor of the United States. The defendant demanded a jury trial, which the trial court denied. In reversing, the Court of Appeals noted that the action for damages was the conceptual equivalent of the common law action for debt and thus fell within the Seventh Amendment. The fact that equitable relief was also sought was held to be irrelevant. As the Court stated:

.  .  . it seems to us inexorably clear that any such union of equitable and legal claims in a complaint, under Rule 18(a), should not nakedly be em-

---

4. The Congress was careful to assure that the unification would not dilute the right to jury trial. The enabling Act of June 19, 1934, 48 Stat. 1064, provided that "(t)he court may at any time unite the general rules prescribed by it for cases in equity with those in actions at law so as to secure one form of civil action and procedure for both: Provided, however,

That in such union of rules the right of trial by jury as at common law and declared by the seventh amendment to the Constitution shall be preserved inviolate." Cf. Sibbach v. Wilson, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). Substantially the same admonition is carried forward as 28 U.S.C. § 2072.

ployed, as, or unconcernedly be permitted to become, an instrument for curbing or prejudicing the *substantive and fundamental right of jury trial,* as that right otherwise would exist in relation to a separate legal cause of action which has been joined in the complaint. (Emphasis added.)

The Supreme Court has made it quite clear that the presence of both equitable and legal claims cannot defeat the right to jury trial on the latter. In Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), which cites *Leimer* with approval, the plaintiff sought declaratory relief under the antitrust statutes as well as an injunction pendente lite. The defendant answered, counterclaimed for treble damages, and demanded a jury. In holding erroneous the trial court's determination that the suit was essentially equitable, the Supreme Court held that defendant was entitled to a jury trial of legal issues and observed that "the justification of equity's deciding legal issues once it obtains jurisdiction, and refusing to dismiss a case, merely because subsequently a legal remedy becomes available, must be re-evaluated in the light of the liberal joinder provisions of the Federal Rules which allow legal and equitable causes to be brought and resolved in one civil action." 359 U.S. at 509, 79 S.Ct. at 956. This case was explicated by the Court of Appeals for this Circuit in Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp., 294 F.2d 486, 490–491 (5th Cir. 1961), where it was stated that:

> *Beacon Theatres* holds that where the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, *the discretion of the trial court* is "very narrowly limited and *must, wherever possible, be exercised to preserve jury trial. . . .*"

It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. *As long as any legal cause is involved the jury rights it creates control.* (Emphasis added.)

*See also:* Rachal v. Hill, 435 F.2d 59 (5th Cir. 1970), certiorari denied 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971) ; United States v. Williams, 441 F.2d 637 (5th Cir. 1971).

In Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), the Supreme Court unequivocally put to rest the notion that the Seventh Amendment was so weak a reed that it might be snapped whenever a federal court could be persuaded to characterize legal issues as "incidental" to equitable issues. Arising out of a suit over a trademark licensing contract, the complaint prayed for an injunction against use of a trademark as well as an accounting for money due under the contract. The Court held that the claim, however construed, was for a money judgment and could not be transmogrified into an equitable claim by labeling it as a prayer for an accounting. In the case at bar, plaintiffs seek to characterize the claim for back pay as an "integral part of the equitable remedy." This is simply an attempt to resurrect the discredited "incidental remedy" test and is precisely the sort of conclusionary word game condemned in *Dairy Queen.* Cf. Swofford v. B & W, Inc., 34 F.R.D. 15 (S.D.Tex.1963), aff'd 336 F.2d 406 (5th Cir. 1964), certiorari denied 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). It follows that plaintiff's prayer for injunctive relief in addition to back pay should not operate to deprive defendant of a jury trial.

■ C. *Are the factual issues and necessary computation in this case so complex as to render it peculiarly inappropriate for a jury?* In an extraordinary case, the complexity of issues may be so great that only a court of equity may unravel them, thus implying an inadequate remedy at law. It is easier to state this principle than to hypothesize a case in which it would apply. Cf. Stockton v. Altman, 432 F.2d 946 (5th Cir. 1970), certiorari denied 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 532 (1971). Indeed, in view of the historical test

mandated by the Seventh Amendment, it is highly questionable whether a court may properly inquire into the practical abilities and limitations of juries in deciding whether the right to a jury trial exists in a given case. See James, Right to a Jury Trial in Civil Actions, 72 Yale L.J. 655, 691 (1963). However, the inquiry is often made,[5] and with less than consistent results. For example, two District Courts in this Circuit have recently applied the functional test to the precise question at bar and reached opposite conclusions. In Hayes v. Seaboard Coast Line Railroad Company, 46 F.R.D. 49, 53 (S.D.Ga.1968), the Court concluded that a jury under Title VII is ill-equipped for such "complicated computations". On the other hand, in Culpepper v. Reynolds Metals Company, 296 F.Supp.

1232, 1241 (N.D.Ga.1969), rev'd on other grounds 421 F.2d 888 (5th Cir. 1970), it was decided that a back pay award is "automatically calculable" and thus too simple to require the conscience of a jury. In any event, this Court is of the opinion that a Title VII case does not harbor factual issues so esoteric as to be beyond the ken of an American jury. Cf. Martin v. Ethyl Corp., 341 F.2d 1 (5th Cir. 1965). On this point, it is sufficient to note that federal juries have been competently coping with patent cases in the country since 1790. Cf. Tights, Inc. v. Stanley, 441 F.2d 336 (4th Cir. 1971), certiorari denied, 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 91 (1971). As the Supreme Court has observed, "(i)n view of the power given to District Courts by Federal Rule of Civil Procedure 53(b) to

---

5. The functional desirability of jury trial has been a subject of contention for at least six centuries, with no apparent consensus having been reached. As early as 1376, the institution was faulted on the ground that it inured "to the great damage of the people and the impoverishment of the jurors and caused much delay." See Plucknett, A Concise History of the Common Law 160 (5th ed. 1956), quoted at Damsky v. Zavatt, 289 F.2d 46, 50 (2nd Cir. 1961). A more recent statement is that of Judge Frank, Courts on Trial (1949).

To the extent that the functional critique is based upon considerations of economy and efficiency, it would seem that the proper response is to streamline the mechanics of jury trial rather than to employ judicial legerdemain for the purpose of narrowing the Seventh Amendment. See C. W. Joiner, Jury Trials—Improved Procedures, 48 F.R.D. 79 (1969). One mechanical reform might be size reduction, as District Judge Tamm, now Judge of the Court of Appeals for the District of Columbia Circuit, has "found in the verdict of five-member juries the same objectivity, the same sense of justice, the same common sense, the same wisdom, the same care, the same realistic appreciation of value, the same evaluation of credibility, the same adherence to the court's instructions, the same attention to witnesses and counsel, as we have come to expect from a twelve-member jury." Tamm, The Five-Man Civil Jury, 51 Geo.L.J. 120, 138 (1962). In this respect, it is interesting to note that the National Conference on the Judiciary recently approved

in principle a recommendation of its Committee on the Operation of the Jury System for a reduction in the size of juries in civil trials in the United States District Courts. See 39 U.S.L.W. 2527, March 23, 1971. See also: E. J. Devitt, Six-Member Civil Juries Gain Backing, 57 A.B.A.J. 1111 (1971).

Another mechanical criticism of the jury system, perhaps of particular relevance in the context of Title VII, is that the system may sometimes be administered to produce panels which are not truly representative of the community. Cf. Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966). To rectify this problem, Congress enacted the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., which, in the words of the House Committee on the Judiciary, "virtually eliminates the possibility of impermissible discrimination and arbitrariness at all stages of the jury selection process, and thereby tends to insure that the jury list will be drawn from a cross section of the community." H.R.Rep.No.1076, 90th Cong., 2d Sess. (1968), 1968 U.S.Code Cong. & Admin.News, pp. 1792, 1794. This statute now provides that "(n)o citizen shall be excluded from service as a grand or petit juror in the district courts of the United States on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862. As the Act does for jury selection what Title VII does for employment, there is simply no legitimate reason to fear that federal juries, by reason of their composition, will not enforce Title VII.

appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will be a rare case in which it can be met." *Dairy Queen, supra,* 369 U.S. at 478, 82 S.Ct. 894 at 900.

■ D. *Were the question dubitable, should not a procedural right of constitutional stature be accorded the benefit of the doubt?* It is important to note that the Seventh Amendment issues its command directly and specifically to the federal judiciary. Like the evidentiary requirement of two witnesses to support a conviction for treason, "(h)ere, the language of the Constitution is addressed specially to the courts." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60 (1803). Such language may therefore be strictly effectuated by the courts, even in a doubtful case, without fear of invading the provinces of either of the coequal branches. This, perhaps, accounts for the fact that "the federal policy favoring jury trials is of historic and continuing strength." Simler v. Connor, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963). Cf. Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). That such strength is indeed continuing is manifest from the recent decisions of the Supreme Court previously discussed.

Certainly it [*Beacon Theatres*] lends impetus toward finding a right to trial by jury in doubtful cases. . . .

*Dairy Queen* has surely not answered all the questions suggested by *Beacon Theatres.* It has answered some of them, and its renewed emphasis on the fact that the procedural innovations of the rules have made traditional equita-

ble remedies unnecessary in many cases strengthens the impression that the Court does, in fact, intend to require a substantial expansion of jury trial in areas where heretofore a jury had been thought unnecessary.

C. A. Wright, Law of Federal Courts, 406, 408 (2nd ed. 1970). Subsequent to the publication of this observation, there has been reason to suppose that the "substantial expansion" is proceeding apace. In last year's case of Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Supreme Court departed from a century of precedent to hold that the Seventh Amendment applies to the determination of legal issues in stockholder's derivative suits. Under these circumstances, and if the slate were clean, it would be the clear duty of a District Court to resolve the doubt in favor of the constitutionally protected right by ordering that issues of fact common to the legal and equitable claims in this Title VII suit be tried to a jury.

E. *Conclusion*

■ The foregoing constitutes the opinion of the Court. Unfortunately, it cannot form the ratio decidendi of the ruling. The precise question raised by the motion at bar was presented and decided in Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969), where the Court of Appeals for this Circuit held that the right to trial by jury does not exist in a Title VII suit.[6] Although this conclusion was stated in a single paragraph and in a manner so summary as to suggest that the Court had not been fully apprised of the serious constitutional implications of its decision, it is nonetheless the law of the Circuit and, as such, binds this Court. Accordingly, the cause shall be struck from the jury docket.

6. Accord: Hayes v. Seaboard Coast Line R.R. Co., 46 F.R.D. 49 (S.D.Ga.1968) Cheatwood v. South Central Bell Telephone and Telegraph Co., 303 F.Supp. 754 (M.D.Ala.1969); Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232 (N.D.Ga. 1968), rev'd on other grounds 421 F.2d 888 (5th Cir. 1970); Moss v. Lane, 50 F.R.D. 122 (W.D.Va.1970); Gillin v.

Federal Paper Board Co., Inc., 52 F.R.D. 383 (D.Conn.1970); Bradington v. International Business Machines Corp., 15 F.R.Serv.2d 79 (D.Md.1971); United States v. Ambac Industries, Inc., 15 F.R. Serv.2d 607 (D.Mass.1971); cf. Robinson v. Lorillard, 444 F.2d 791, 802 (4th Cir. 1971).