Meekie D. MOSELEY et al.,
Plaintiffs-Appellees,

v.

GOODYEAR TIRE & RUBBER COMPANY, Defendant-Third Party-Plaintiff-Appellant,

v.

The ENERGY RESEARCH AND DEVELOPMENT ADMINISTRATION, Third Party-Defendant-Appellee.

No. 77–2669.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1980.

---

John B. Abercrombie, Joseph R. Weeks, Houston, Tex., for defendant-third party plaintiff-appellant.

Floyd W. Addington, Jasper, Tex., Janet Hellmich, Asst. U. S. Atty., Tyler, Tex., for plaintiffs-appellees.

Before MORGAN, RONEY and GARZA, Circuit Judges.

GARZA, Circuit Judge:

This is a reverse discrimination action brought by certain white employees of the Goodyear Tire & Rubber Company [Goodyear], pursuant to 42 U.S.C. §§ 1981[1] and 2000e [the latter section sometimes hereinafter referred to as "Title VII"].[2] The white employees allege that the granting of remedial seniority to certain black employees by Goodyear amounted to a displacement of the former from their jobs. Upon motion by Goodyear, the district court joined the Energy Research & Development Administration [ERDA] in this action.[3] The district court ruled that Goodyear's actions in granting remedial seniority had dis-

---

1. 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and·exactions of every kind, and to no other.

2. Although the Appellees' complaint stated only 42 U.S.C. § 2000e, they obviously meant to bring it under the entire subchapter dealing with equal employment opportunities, known as Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. §§ 2000e–2000e–17.

3. Prior to January 19, 1977, the ERDA was known as the Atomic Energy Commission [AEC]. On October 1, 1977, the ERDA became the Department of Energy. Since the pleadings and briefs in this case refer to the ERDA, however, this court will also use that term.

placed the white employees. The district court ordered that the white employees be reinstated and that they receive awards of backpay and attorney's fees. The district court allowed no recovery or relief against the ERDA.[4] We reverse.

Goodyear's Beaumont facility, which is involved in this case, was originally staffed in 1961. In selecting employees for positions above laborer, Goodyear required previous experience, completion of high school or passage of the G.E.D. equivalency test and satisfactory performance on a personnel test and a mechanical comprehension test. Blacks were not hired into nonlaborer parts of the plant until September 15, 1965. Before that date there were thirty black employees who were hired as laborers who did not qualify for promotion under Goodyear's requirements.

A class action was then instituted in federal district court by all black employees who were hired into Goodyear's labor department prior to September 15, 1965. The district court found discriminatory practices in the promotional requirements, but the only relief afforded by the district court was to enjoin Goodyear from using nonvalidated tests in pre-employment or promotion situations. The Fifth Circuit, in *Duhon v. Goodyear Tire & Rubber Company, Beaumont Plant*, 494 F.2d 817 (5th Cir. 1974), vacated the judgment of the district court and remanded the case. The Fifth Circuit held that the district court should have awarded backpay and seniority revision. 494 F.2d at 819.

During the pendency of the appeal in *Duhon*, the AEC and Goodyear began negotiations regarding remedial seniority. In early 1974, before the issuance of the Fifth Circuit's decision in *Duhon*, a Memorandum of Agreement between the AEC and Goodyear was finalized. In that memorandum, Goodyear agreed to grant remedial seniority to members of the "affected class," [5] equal to their seniority in the plant except for those employees in the Wing Chemical and Transportation departments. The latter employees' seniority could be no greater than the age of their particular department.

Following the court's vacating of the decision in *Duhon*, the district court entered a judgment enjoining Goodyear from using any tests or educational requirements unless they were properly validated and applied in a nondiscriminatory manner. The district court also enjoined Goodyear from enforcing any seniority system which does not grant remedial seniority to the affected class equivalent to plant seniority. The court provided that remedial seniority for members of those departments which were not in existence prior to July 2, 1965, could only be granted from the date of creation of the particular department. The district court also awarded backpay, interest and attorney's fees to the class. The district court judgment also provided that Goodyear, at its option, could consider the relative plant seniority of class members and non-class members when they are in competition for promotion, transfer and the like.[6]

With this general background in mind, the court will now discuss the circumstances leading up to the present appeal. Meekie V. Moseley, William R. Jackson, and James Graham, all white individuals, were hired as Goodyear employees in July, September and

4. The district court's Memorandum Opinion and Judgment were filed on July 7, 1977. The ERDA, however, had been removed as a third party defendant over a year earlier. The district court granted the ERDA's Motion to Dismiss on April 12, 1976.

5. The "affected class" apparently involved the same thirty black employees that were members of the class action in the *Duhon* case.

6. The Memorandum of Agreement, which delineated the understanding reached by Goodyear and the AEC, did not include a provision which allowed nonmembers of the affected class to use plant seniority when competing with affected class members. Following a meeting between the two in December of 1973, Goodyear did include such a provision in a proposal concerning the treatment and remedy of the affected class. Goodyear contended at trial that the AEC refused to accept such a proposal. The AEC, which had become the ERDA by the time of trial, denied that it had objected to that provision. This particular dispute was not raised on appeal, however, and the court need not rule upon it.

October of 1961, respectively. In December 1961, Joe Azore, a black man, was hired as an employee by Goodyear. Joe Polly, also a black person, was hired in December of 1962. On December 4, 1967, the External Trucking Transportation Department [the trucking department] was created. Moseley, Jackson, Graham and Azore transferred to the trucking department on January 1, 1973. Since all four men entered the trucking department on the same day, departmental seniority was determined by each employee's seniority in the plant. On January 8, 1973, Polly also transferred to the trucking department.

The importance of seniority in the trucking department lies in the opportunity to bid on "front of the week" runs. A "front of the week" run generally covers the period from Sunday night until Thursday morning. The "end of the week" run spans Thursday morning until Sunday night. Front of the week runs are preferable, according to the Appellees. According to the Appellees, a job during the front of the week involves less traffic, more opportunities to acquire overtime, a choice of vacations, and a better family life since it allows the driver to be home on weekends. Prior to the *Duhon* case, Moseley, Jackson and Graham all had opportunities to bid on front of the week runs. However, there was also evidence at trial by Goodyear's personnel director that the company endeavored to equalize the opportunities for all drivers. There was evidence that, over a period of time, a driver would have equal opportunities to make equivalent money during both parts of the week. The personnel director also denied that drivers on the front of the week have more opportunities for overtime. The testimony of Mr. Jackson demonstrated that drivers with less seniority could and sometimes do have more opportunities to bid than those with more seniority.

Joe Azore and Joe Polly were members of the class action in *Duhon* and, apparently, the only black employees in the trucking department at the time. Following the Memorandum of Agreement, Goodyear granted remedial seniority to Azore and Polly equivalent to the date of the creation of the trucking department. In effect, this placed Azore and Polly at the top of the trucking department's seniority list.

The Appellees then instituted this reverse discrimination suit in federal court, alleging that they had been displaced from their jobs by the action of Goodyear which had relegated them to the end of the week schedule.[7] The Appellees sought declaratory and injunctive relief seeking to restrain Goodyear from discriminating against them because they are Caucasian. The Appellees also sought reinstatement, backpay, attorney's fees and seniority within the transportation department equal to their plant seniority. Goodyear then sought to join the ERDA as a party.[8] The district court granted such joinder but later dismissed the ERDA from the suit.

Goodyear now brings five points of error before this court. First, Goodyear contends that the district court erred in finding that Appellees had been displaced from their jobs. Second, Goodyear asserts that the injunctive relief allowed the Appellees was overbroad since it placed the Appellees in seniority positions above all employees in the trucking department, both black and white. Goodyear also contends that the injunctive relief was overbroad since it is contrary to the "rightful place" doctrine and grants an actionable right to white employees who have no such right. Third, Goodyear contends that the doctrine of

---

7. This suit was originally brought as a class action, but by the time of judgment, the three plaintiffs had waived the class allegation.

8. Goodyear contended in its motion to join that it had been required to enter into the settlement agreement by the provisions of an executive order signed on September 24, 1965, which provides for nondiscrimination in government employment. Exec. Order No. 11,246, 3 C.F.R. 339 (1964–1965 comp.), *reprinted in* 42 U.S.C. § 2000e note. Goodyear desired the joinder since it alleged that a deviation from that affirmative action program would have led to a cancellation by the ERDA of Goodyear's present government contracts and a debarment from all future government contracts.

laches should be applicable. Fourth, Goodyear contends that the award of damages was erroneous. Lastly, Goodyear contends that any damage award should be assessed solely against the ERDA due to the former's allegation that it was required to enter into that agreement by the ERDA.

■ The major contention of this case is whether the Appellees were displaced from their jobs. A cognizable action under Title VII may be instituted against discriminatory employment practices but may not be aimed at a bona fide seniority system. *See Franks v. Bowman Transportation Company,* 424 U.S. 747 at 757, 96 S.Ct. 1251, 47 L.Ed.2d 444. The Supreme Court has held that an employment practice, though neutral on its face, which tends to perpetuate past discrimination is a violation of Title VII. *See Griggs v. Duke Power Company,* 401 U.S. 424, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Pursuant to 42 U.S.C. § 2000e–2(h), a bona fide seniority system will withstand challenge even though it might also perpetuate the effects of past discrimination. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 352–353, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The present case involves only a challenge to the hiring and promotional practices of Goodyear and not to its seniority system.

■ When a court determines that a company has engaged in unlawful employment practices, 42 U.S.C. § 2000e–5(g) gives a district court the power to order such affirmative action as it may deem appropriate. The district court is given broad discretion in this matter. *See LeBlanc v. Southern Bell Telephone and Telegraph Company,* 460 F.2d 1228, 1229 (5th Cir. 1972), *cert. denied,* 409 U.S. 990, 93 S.Ct. 320, 34 L.Ed.2d 257 (1972); *Vogler v. McCarty, Inc.,* 451 F.2d 1236, 1238 (5th Cir. 1971). Such affirmative action includes the granting of remedial seniority. The granting of such relief must be preceded by a showing of racial discrimination which is not subsequently rebutted by the employer. *See Franks v. Bowman Transportation Company,* 424 U.S. 747, 772–773, 96 S.Ct.

1251, 47 L.Ed.2d 444 (1976); *Gamble v. Birmingham Southern Railroad Company,* 514 F.2d 678, 683 (5th Cir. 1975).

■ In the instant case, the district court's final judgment of July 31, 1975 in the *Duhon* case found that Goodyear had discriminated against the black workers in its hiring and promotional practices. Pursuant to that finding, the court granted remedial seniority. Such relief is to be granted according to the "rightful place" theory. The rightful place theory provides that workers injured by violations of Title VII and § 1981 be restored to the economic position in which they would have been had it not been for the discrimination. *See Gamble v. Birmingham Southern Railroad Company,* 514 F.2d at 683; *Pettway v. American Cast Iron Pipe Company,* 494 F.2d 211, 252 (5th Cir. 1974), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979).

■ Notwithstanding the above, remedial seniority may not be used to displace or "bump" a permanent employee working a regular assignment. If there is no other option, rather than bumping a permanent employee, victims of employment discrimination are to be given a preference for future vacancies. *See Gamble,* 514 F.2d at 685. While a black employee may not usurp a white employee's job, the courts have recognized that in order to effectuate the purposes of Title VII, there will be instances where white employees will suffer certain disadvantages by the restructuring of a seniority system. It is settled law that retroactive or remedial seniority may not be denied merely because it might affect or impair the interests of white employees. *See Franks v. Bowman Transportation Company,* 424 U.S. at 774–75, 96 S.Ct. 1251; *Dawson v. Pastrick,* 600 F.2d 70, 76 (7th Cir. 1979); *Vogler v. McCarty, Inc.,* 451 F.2d 1236, 1238 (5th Cir. 1971).

■ In this case, there were instances where the interests of the white employees were impaired. Due to the granting of the remedial seniority, the Appellees were required to work end of the week schedules

instead of their usual front of the week schedules. This in no way amounts to a displacement, however. The Appellees have retained their jobs in the trucking department, they continue to receive the same hourly wage and still drive the same trucks. Additionally, there was testimony at trial by Goodyear's personnel director that, over a period of time, end of the week drivers have the same opportunity to make equal amounts of money as front of the week drivers. There is also evidence that in certain instances, end of the week drivers did receive a larger number of work opportunities than drivers at the front of the week.

The facts in this case do not demonstrate the displacement of the Appellees.[9] The remedial seniority instituted by the district court plainly effectuates the purposes and goals of Title VII, which are aimed at the eradication of employment discrimination. It would be a hollow victory indeed if the black employees were successful in their challenging of hiring and promotional discrimination, yet were denied the benefits of the permissible remedial seniority granted in this case.

Therefore, it is the opinion of this court that the decision of the court below was erroneous in its granting of relief to the Appellees. The actions of Goodyear conducted pursuant to its own Memorandum of Agreement with the ERDA and the district court's Judgment of July 31, 1975 were correct and should not have been disturbed. The Appellees were not displaced, and, thus, there were no acts of discrimination perpetrated against them. Since there were none, Title VII provides no remedy for them. See Cotton v. Hinton, 559 F.2d 1326, 1334 (5th Cir. 1977); United States v. United States Steel Corporation, 520 F.2d 1043, 1048 (5th Cir. 1975), cert. denied, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976).

The Appellees also have available no remedy under 42 U.S.C. § 1981. The district court has the power to grant remedial seniority to remedy a violation of Title VII, and, thus, such action cannot amount to a discriminatory practice or a deprivation of constitutional rights against the white employees.

The above holding renders moot the remainder of the issues raised in this case, and the court will not reach them.[10] This case is, therefore, reversed with instructions that the district court grant judgment for the Defendant Goodyear and dismiss this action.

REVERSED.

9. There is evidence in the record from the testimony of Mr. Jackson that the Appellee Graham would have been required to work at the end of the week regardless of the granting of remedial seniority in this case. Apparently, there had been a front of the week driver named Lynn Matthews who had chosen to drive at the end of the week. At the time in question, Mr. Matthews decided to return to the front of the week. Mr. Matthews had department seniority over all three Appellees. Since Mr. Graham has the lowest seniority of the three Appellees, the decision of Mr. Matthews to return to the front of the week would have forced Mr. Graham to the end of the week even without the existence of Mr. Azore's and Mr. Polly's remedial seniority.

10. Goodyear also contends in the alternative that if the district court had gone beyond the bounds of Title VII, the rebidding of the positions was still valid as a voluntary affirmative action plan under United Steelworkers of America v. Weber, —— U.S. ——, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979). The Weber case specifically did not involve state action nor did it concern Title VII or a court's order to remedy a violation of the act. The present case involved all those matters. Since this court has held that the remedial seniority and the pursuant job rebidding in the instant case were valid remedies, there is no need to discuss the Weber aspects of this case, if any.