**Chester W. SETSER, Appellant,**

v.

**NOVACK INVESTMENT COMPANY d/b/a Budig Western Trucking and Alvin S. Novack, Appellees.**

**No. 80–1100.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1980.

Decided Jan. 26, 1981.

---

Michael J. Hoare, Chackes & Hoare, St. Louis, Mo., for appellant.

H. Kent Munson, Stein & Seigel, St. Louis, Mo., for appellees.

Before STEPHENSON and HENLEY, Circuit Judges, and HUNTER,* District Judge.

ELMO B. HUNTER, District Judge.

This is an appeal from a final judgment entered below against the appellant Chester Setser and in favor of appellees Novack Investment Co. d/b/a Budig Western

---

* The Honorable Elmo B. Hunter, Chief Judge, United States District Court for the Western District of Missouri, sitting by designation.

1. The case was tried to the district court on July 17–19, 1978, and on January 7, 1980, the district court entered its Memorandum and Order in favor of appellees.

2. Section 1981 provides:
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Trucking Co. and Alvin S. Novack.[1] For the following reasons, we reverse and remand for jury trial.

Appellant brought his action alleging only violations of 42 U.S.C.A. § 1981 [§ 1981].[2] Appellant, a white male, contended in the district court that he was refused employment with appellees in the fall of 1973 for the unlawful reasons of racial discrimination and retaliation by appellees after appellant filed a charge of discrimination with the Equal Employment Opportunity Commission [EEOC]. Appellant argues on appeal that the district court erred in striking his demand for jury trial and that the district court erroneously found that the appellees did not discriminate or retaliate against appellant. Appellees contend that even if they did discriminate, they did so lawfully because they were following affirmative action guidelines pursuant to Executive Order 11246.[3] Further, appellees assert that as a matter of law retaliation is not cognizable as a cause of action under § 1981.

I.

The complaint sought only monetary damages for backpay, lost insurance benefits, expenses incurred in seeking alternative employment, inconvenience, humiliation and embarrassment, pain and suffering, punitive damages, interest, attorneys' fees and costs. The appellant moved for a jury trial and the appellees opposed such a

---

3. This regulation requires that as a matter of public policy, federal contractors adopt affirmative action policies to prevent discrimination against any employee or applicant for employment because of race, color, religion or national origin. See 3 C.F.R. § 339. Appellees were, in part, government contractors and were covered by this regulation. See *United Steelworkers of America v. Weber*, 443 U.S. 193, 223 n.2, 99 S.Ct. 2721, 2726, n.2, 61 L.Ed.2d 480 (1979). For an exhaustive study of the background of Executive Order 11246, see *Contractors Ass'n. of Eastern Pa. v. Secretary of Labor*, 442 F.2d 159, 168–71 (3d Cir. 1971); and Comment, *Executive Order No. 11246: Presidential Power to Regulate Employment Discrimination*, 43 Mo.L. Rev. 451 (1978).

request only for the claims seeking lost wages, interest, attorneys' fees and costs. On November 8, 1977, the district court, *sua sponte*, entered its order denying appellant's demand for jury trial on all issues. The district court's order explained the ruling by stating that "this court has consistently held that a jury trial is unavailable in § 1981 cases."

Appellant argues that there is a constitutional guarantee of the right to a jury trial under the Seventh Amendment in an action brought pursuant to § 1981 on all claims for "legal" relief.[4] Even though the Supreme Court has yet to identify specifically the parameters of the jury trial right in § 1981 actions, an analysis of various judicial authorities indicates that parties are constitutionally entitled to jury trials under § 1981 on all legal claims. The Supreme Court has definitively held that "[t]he Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies enforceable in an action for damages in ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974).[5] And, it is clearly settled that actions brought pursuant to § 1981 afford plaintiffs both legal and equitable relief. *See Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The legal rights available include "compensatory and, under certain circumstances, punitive damages." *Johnson v. Railway Express Agency, supra*, 421 U.S. at 460, 95 S.Ct. at 1720. *See also Johnson v. Ryder Truck Lines, Inc.*, 575 F.2d 471 (4th Cir. 1978); *Garner v. Giarrusso*, 575 F.2d 300 (5th Cir. 1978); *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1977); *McCrary v. Runyon*, 515 F.2d 1082 (4th Cir. 1975), *aff'd.*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Tucker v. Harley Davidson Motor Co.*, 454 F.Supp. 738,

743 (D.Wis.1978); *Peterson v. Lehigh Valley Dist. Council*, 453 F.Supp. 735 (E.D.Pa. 1978). Further, many lower courts have recognized the appropriateness of submitting all legal contentions encompassed within a § 1981 cause of action to the jury. *See Santos v. Mt. Sinai Hospital*, (S.D.N.Y. 1980); *Seymore v. Reader's Digest Ass'n., Inc.*, 493 F.Supp. 257, 267 (S.D.N.Y.1980); *Johnson v. Sea Drilling Corp.*, 486 F.Supp. 462, 463–64 (E.D.La.1980); *McCray v. Standard Oil Co.*, 76 F.R.D. 490, 501 (N.D.Ill. 1977); *Saad v. Burns Intern. Sec. Services, Inc.*, 456 F.Supp. 33 (D.D.C.1978); *Miller v. Doctors General Hospital*, 76 F.R.D. 136 (D.Okl.1977); *Tucker v. Harley Davidson Motor Co., supra*, 454 F.Supp. at 744; *Marshall v. Electric Hose & Rubber Co.*, 413 F.Supp. 663, 666–68 (D.Del.1976); *but compare Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979); *and Baker v. City of Detroit*, 458 F.Supp. 379, 384 (E.D.Mich. 1978). We agree with appellant that the district court erred in not granting a jury trial in an action based on § 1981 on all legal claims.

Having concluded that appellant is entitled to a jury trial on all of his legal claims, we are next confronted with appellant's argument that backpay should properly be characterized as a legal damage and thus be an issue for the jury. The question of the proper characterization of backpay arises here in the unusual context of a plaintiff who is not also seeking the equitable remedy of reinstatement. *See Lynch v. Pan American World Airways*, 475 F.2d 764, 765 (5th Cir. 1973); *Booker v. Electrical Workers Union, Local 2021 IBEW (AFL–CIO)*, 431 F.Supp. 1035, 1036–37 (D.Okl.1977); *Flores v. Local 25 International Brotherhood of Electrical Workers, AFL–CIO*, 407 F.Supp. 218, 220 (E.D.N.Y.1976); *see also Donoghue v. Behler*, 429 F.Supp. 403, 406

---

4. Appellant does not contend that attorneys' fees, interest and costs should be jury issues.

5. *Curtis v. Loether, supra*, allows jury trials in actions brought under Title VIII of the Civil Rights Act of 1968. Many other statutory remedies have been held to afford the right to jury trial for legal claims. *See Curtis v. Loether,*

*supra*, 415 U.S. at 193, 94 S.Ct. at 1007. Also, we note that actions framed under 42 U.S.C. § 1983 can afford the jury trial right. *See Hildebrand v. Board of Trustees*, 607 F.2d 705 (6th Cir. 1979); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977); and *Drone v. Hutto*, 565 F.2d 543 (8th Cir. 1977).

(D.N.J.1977). Basically, it seems that two rationales have supported the characterization of backpay as an equitable remedy in employment discrimination cases. First, many courts have concluded that backpay is incidental to the much broader equitable remedy of reinstatement, *see Lynch v. Pan American World Airways, supra.* And second, various courts have analogized backpay to the equitable doctrine of restitution. *See, e. g., Robinson v. Lorillard Corp.,* 444 F.2d 791, 802 (4th Cir. 1971), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972); *Equal Employment Opportunity Commission v. Detroit Edison Co.,* 515 F.2d 301, 308 (6th Cir. 1975), *vacated on other grounds,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977); *Harkless v. Sweeney Independent School District,* 427 F.2d 319, 324 (5th Cir. 1970); and *Demkowicz v. Endry,* 411 F.Supp. 1184, 1191 (S.D.Ohio 1975). After a careful examination, we find both rationales to be of questionable merit in an action brought pursuant to § 1981.[6]

The courts that have included backpay as an adjunct equitable remedy to reinstatement have analogized claims brought under § 1981 to Title VII claims, where there is seeming unanimity of judicial thinking interpreting that statute as providing solely equitable relief.[7] *See Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1975); *Harmon v. May Broadcasting Co.,* 583 F.2d 410 (8th Cir. 1978); *Slack v. Havens,* 522 F.2d 1091, 1094 (9th Cir. 1975); *see also Hildebrand v. Board of Trustees of Michigan State University,* 607 F.2d 705 (6th Cir. 1975); and Comment, *Developments—Title VII,* 84 Harv.L.Rev. 1109, 1265–66 (1971). While Congress apparently intended only court granted relief in Title VII, *see Curtis v. Loether, supra,* 415 U.S. at 197, 94 S.Ct. at 1009; *Lorillard v. Pons, supra,* 434 U.S. at 584–85, 98 S.Ct. at 872, no such limitation is apparent under § 1981. *See Johnson v. Railway Express Agency, supra,* 421 U.S. at 459–60, 95 S.Ct. at 1719–1720. Further, the judicial analysis that has construed backpay as incidental to reinstatement appears to be the theoretical equivalent of the repudiated "clean-up doctrine" in equity. *See Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); and James & Hazard, Civil Procedure, Ch. 8 (2d ed. 1977).[8]

Implicit within the analysis used by courts holding that backpay should be awarded as an incident to reinstatement is the recognition that backpay is somehow dissimilar to traditional equitable remedies. Some courts have attempted to liken backpay to a form of restitution in order to characterize backpay as equitable. *See Equal Employment Opportunity Commission v. Detroit Edison Co., supra; Robinson v. Lorillard Corp., supra ;* and *Demkowicz v. Endry, supra.* Such characterization ap-

---

**6.** There is a third possible rationale for characterizing backpay as equitable. The Supreme Court has reasoned that because awards of backpay under Title VII are discretionary, then such awards are equitable in nature. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 442–43, 95 S.Ct. 2362, 2384, 45 L.Ed.2d 280 (1975) (Rehnquist, J., concurring). This rationale does not transfer into the § 1981 arena because § 1981 contains none of the discretionary language contained in Title VII. Further, as Justice Rehnquist noted, the Supreme Court's cutback on the discretion the district judges have to award backpay in Title VII actions renders such awards more in the nature of legal damages. *Albemarle Paper Co. v. Moody, supra.*

**7.** Nevertheless, some commentators have criticized the characterization of backpay as equitable in Title VII actions. *See* Redish, *Seventh Amendment Right to Jury Trial: A Study in the Irrationality of Rational Decision Making,* 70

NW.U.L.Rev. 486, 526–30 (1975); Comment, *Developments—Section 1981,* 15 Harv.Civ. Rights—Civ.Lib.L.Rev. 29, 250 (1980). Interestingly, the Supreme Court has expressly left the jury trial right an open question in Title VII actions. *See Lorillard v. Pons,* 434 U.S. 575, 583–84, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); and *Curtis v. Loether, supra,* 415 U.S. at 196–97, 94 S.Ct. at 1009 (1974).

**8.** As the Supreme Court noted in *Ross v. Bernhard:*

... [W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed by either trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims.

396 U.S. at 537–38, 90 S.Ct. at 737–738.

pears to us to misconceive the concept of restitution.[9] In essence, restitution seeks to return to an injured party that which a wrongdoer has taken away. *See* Restatement, Restitution, § 1–2 (1937); *Samuel v. University of Pittsburgh*, 375 F.Supp. 1119, 1135 (W.D.Pa.1974); *Newco Land Co. v. Martin*, 358 Mo. 99, 213 S.W.2d 504, 510 (Mo.1948); *Savage-Scofield Co. v. City of Tacoma, et al.*, 105 P. 1032 (Wash.1909). In many instances of § 1981 discrimination in an employment context, the injured party has not conferred any benefit on the alleged wrongdoer that would warrant a restitutionary recovery for backpay. This is certainly true, as here, in a case of wrongful refusal to hire. But, it is also true in many situations of unlawful firings and unlawful failures to promote. *See* Comment, *Developments—Section 1981, supra*, 15 Harv.Civ. Rights—Civ.Lib.L.Rev. at 250.

◼ In our view, the remedy of backpay in § 1981 cases is more appropriately characterized as a compensatory, legal damage. A number of district courts already have adopted this view. *See Santos v. Mt. Sinai Hospital, supra; Partin v. St. Johnsbury*

*Co., Inc.*, 447 F.Supp. 1297, 1303 n.6 (D.R.I. 1978); *Devore v. Edgefield County School District*, 68 F.R.D. 423, 427 (D.S.C.1975).[10] We conclude that backpay or lost wage determinations are inherently in the nature of legal damages.[11] The calculations necessary to determine the hours of lost work stemming from a § 1981 violation are straight forward damage computations certainly within the practical capabilities of juries. *See, e. g., Pons v. Lorillard, supra*, 549 F.2d at 954.[12] In sum, we hold that the district court erred in denying appellant's demand for jury trial on all of his legal claims including his claim for backpay.

◼ In anticipation of the foregoing conclusion, appellees argued that the evidence presented at trial failed to develop a submissible case.[13] After a very careful review of the entire record in this case, it is apparent that there was a marked degree of conflicting evidence that should appropriately be assessed by a jury. As such, we are satisfied that it is not possible to conclude as a matter of law that the appellant failed to produce a submissible case on the

**9.** Indeed, restitution is suited both to actions at law and in equity depending upon the nature of the rights sought to be vindicated. *See Bernstein v. Universal Pictures, Inc.*, 79 F.R.D. 59, 67 (S.D.N.Y.1978); and *Polstorff v. Fletcher*, 430 F.Supp. 592, 595 (N.D.Ala.1977).

**10.** And other courts (even though sitting in equity) have recognized the validity of characterizing backpay awards as a type of compensatory damage in § 1981 actions. *See Faraca v. Clements*, 506 F.2d 956, 959–60 (5th Cir. 1975); and *Smith v. Board of Education of Morrilton School District No. 32*, 365 F.2d 770, 784 (8th Cir. 1966).

**11.** We note that in other contexts courts have construed backpay as a compensatory or legal damage as opposed to a form of equitable relief. *See Paxman v. Campbell*, 612 F.2d 848, 857–58 (4th Cir. 1980) (§ 1983 action); *Wehr v. Burroughs Corp.*, 438 F.Supp. 1052, 1056–58 (E.D.Pa.1977) and *Pons v. Lorillard*, 549 F.2d 950, 954 (4th Cir. 1977), *aff'd., Lorillard v. Pons, supra*, 434 U.S. at 582–85, 98 S.Ct. at 871–872 (age discrimination actions). As well, we observe that in many common law actions involving employment relationships and otherwise, juries have traditionally been called upon to compute lost wages or backpay as a measure of legal damage. *See Sampson v. Mo. Pac. R. Co.*, 560 S.W.2d 573, 587–89 (Mo. en banc

1978); *Sanders v. H. & S. Motor Freight, Inc.*, 526 S.W.2d 332, 336–37 (Mo.App.1975); and *Effinger v. Bank of St. Louis*, 467 S.W.2d 291, 297 (Mo.App.1971) (negligence actions).

**12.** While appellees did not raise the usual policy objections to the use of jury trials, *i. e.*, delay and possible prejudice, we observe that the validity of these policy objections has been seriously challenged. The Supreme Court recognized in *Curtis v. Loether, supra*, 415 U.S. at 198, 94 S.Ct. at 1010, that any prejudice reflected in jury action can be easily corrected through the trial judge's power to direct a verdict, grant judgment notwithstanding the verdict or a new trial. Also, as one commentator has discovered, plaintiffs and defendants appear to move for jury trial in § 1981 actions with nearly equal frequency. *See* Comment, *Developments—Section 1981, supra*, 15 Harv. Civ.Rights—Civ.Lib.L.Rev. at 255. Further, the objection regarding delay has been found to be of unsound merit, *id.* at 254–56, especially in light of the constitutional considerations. *Curtis v. Loether, supra*, 415 U.S. at 198, 94 S.Ct. at 1010.

**13.** This was the major focus of appellees' oral argument.

issues of liability or damages.[14]  *See generally Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962); and *Madrid v. Mine Safety Appliance Co.*, 486 F.2d 856 (10th Cir. 1973).

## II.

We are next confronted with appellees' difficult argument that even if they had engaged in discriminatory practices regarding appellant, they did so "lawfully" insofar as they were attempting to comply with a governmentally encouraged affirmative action plan.[15]  Essentially, appellees contend that their reliance on their affirmative action plan adopted pursuant to Executive Order 11246 constitutes an absolute bar to a cause of action under § 1981 by a white individual for alleged racial discrimination. Appellant argues that when he applied for employment with appellees he was told, in effect, that if he were black he would have been hired.  As such, appellant's position is that appellees' "but for" conduct states a violation of § 1981 and appellant should be able to proceed with an action for money damages.

The threshold issue that we must determine is whether appellant has arguably stated a cause of action under § 1981 based on his allegations.  The Supreme Court has grappled with the concept of "reverse discrimination" in a number of recent decisions.  *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *University of California Regents v. Bakke*, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); *United Steelworkers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); *Fullilove v. Klutznick*, —— U.S. ——, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980).  The entire history of judicial analysis in this troubling area has been checkered.  *See* Boyd, *Affirmative Action in Employment—The Weber Decision*, 66 Iowa L.Rev. 1 (1980); and *United States v. City of Miami, Fla.*, 614 F.2d 1322, 1337 (5th Cir. 1980).[16] Nevertheless, the Supreme Court in *Weber* has indicated that no absolute bars may be erected that completely preclude the advancement of white individuals.  *United Steelworkers of America v. Weber, supra*, 443 U.S. at 208, 99 S.Ct. at 2726; *see also University of California Regents v. Bakke, supra*; and *Moseley v. Goodyear Tire & Rubber Co.*, 612 F.2d 187, 191 (5th Cir. 1980).  We believe that under appellant's version of the facts in this action there is established a cause of action under § 1981. Assuming appellant was told that but for his race a job would have been available to him,[17] then appellees have created an absolute preclusion of whites from consideration for employment.  Appellees' argument that reliance on their affirmative action program gives them, in essence, a license to discriminate on racial grounds cannot be accepted.  We refuse to agree that the institution of an affirmative action plan abso-

14.  In their brief, appellees asserted that we should accept the fact findings of the district court and affirm under the clearly erroneous standard of review.  As we have already concluded that the district court erred in not granting a jury trial, appellees' argument is inapposite as the fact finding duty should have properly been a jury function.

15.  Appellees submit that at the time of appellant's first rejection for employment, they were under intense pressure from the Justice Department and a United States Government Contract Compliance Officer to employ more minority drivers.

16.  We note the Supreme Court's own reluctance to adopt clear lines in reviewing the legal sufficiency of affirmative action plans:

> We need not today define in detail the line of demarcation between permissible and impermissible affirmative action plans.  It suffices to hold that the challenged Kaiser-USWA affirmative action plan falls on the permissible side of the line.

*United Steelworkers of America v. Weber, supra*, 443 U.S. at 208, 99 S.Ct. at 2726.  *Also see generally* Justice Rehnquist's dissent in *Weber*, 443 U.S. at 219–255, 99 S.Ct. at 2735.

17.  In so assuming, we express no opinion on the factual controversy over what appellant was or was not told during his meetings with appellees in connection with his application for employment.

lutely sanctions racial discrimination.[18] While we agree that the government as well as private employers have an interest in promoting the substantial societal goal of advancing the concept of affirmative action, we do not agree that an employer solely on the basis of race can refuse to even consider the application of a white individual. Such a practice, in our view, creates the type of absolute bar or preclusion forbidden by the Supreme Court.

This determination in light of the damage action nature of this case leads us into the uncharted area of the relief available to appellant. Given that the Supreme Court has seemingly approved certain voluntary affirmative action programs that address racial imbalances in actions seeking injunctive relief, see United Steelworkers of America v. Weber, supra,[19] there are still unresolved questions regarding the nature of the legal relief, if any, that a white employee or applicant who is subjected to an illegal implementation of an affirmative action plan is entitled.

In this appeal we are presented with a claim exclusively for money damages. The Supreme Court in Franks v. Bowman Transportation Co., supra, left unanswered the question of whether an employee who is adversely affected by an affirmative action plan has a cause of action for money damages. Chief Justice Burger, while concurring in part and dissenting in part, noted that

... competitive-type seniority relief at the expense of wholly innocent employees can rarely, if ever, be equitable if that term retains traditional meaning. More equitable would be a monetary award to the person suffering the discrimination .... Such monetary relief would serve the dual purpose of deterring wrongdoing by the employer or union—or both—as well as protecting the rights of innocent employees. Id. at 780–81, 96 S.Ct. at 1271; see also the majority opinion at 777 n.38, 96 S.Ct. at 1270 n.38.

And, Justice Powell observed that

[t]he second, and in my view controlling distinction between these types of relief is the impact on other workers. As noted above, the granting of backpay and of benefit-type seniority furthers the prophylactic and make whole objectives of the statute without penalizing other workers. But competitive seniority benefits, as the term implies, directly implicates the rights and expectations of perfectly innocent employees. The economic benefits awarded discrimination victims would be derived not at the expense of the employer but at the expense of other workers. Putting it differently, those disadvantaged—sometimes to the extent of losing their jobs entirely—are not the wrongdoers who have no claim to the Chancellor's conscience, but rather are innocent third parties.

Id. 424 U.S. at 788, 96 S.Ct. at 1276. See also Justice Powell's views in University of

The fatal flaw in petitioner's preferential program is its disregard of individual rights ....

438 U.S. at 319–20, 98 S.Ct. at 2763.

18. Although writing in a constitutional context, we note the views of Justice Powell in Bakke:

In summary, it is evident that the Davis special admissions program involves the use of an explicit racial classification never before countenanced by this Court. It tells applicants who are not Negro, Asian, or Chicano that they are totally excluded from a specific percentage of the seats in an entering class. No matter how strong their qualifications, quantitative and extracurricular, including their own potential for contribution to educational diversity, they are never afforded the chance to compete with applicants from the preferred groups for the special admissions seats. At the same time, the preferred applicants have the opportunity to compete for every seat in the class.

19. Various courts have suggested that injunctive relief is inappropriate because it could thwart the legitimate goals of an employer's affirmative action plan. See Detroit Police Officers' Ass'n. v. Young, 608 F.2d 671 (6th Cir. 1979); Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1972), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); McAleer v. American Tel. & Tel. Co., 416 F.Supp. 435 (D.D.C. 1976); German v. Kipp, 429 F.Supp. 1323 (W.D.Mo.1977), vacated as moot, 572 F.2d 1258 (8th Cir. 1978); see also Franks v. Bowman Transportation Co., supra.

*California Regents v. Bakke,* 438 U.S. 265, 310, 98 S.Ct. 2733, 2758, 57 L.Ed.2d 750 (1978).

Appellant argues that without a cause of action for money damages, he would bear the burden for correcting appellees' past history of discrimination that prompted the necessity for appellees' affirmative action plan. Thus, appellant submits that the appellees would remedy their past abuses during the interim period required to fulfill the goals of their affirmative action program at the appellant's expense. We agree that the proper allocation of the burden for rectifying past discrimination should be placed upon wrongdoing employers instead of innocent employees or applicants.[20]

A number of courts have already recognized the utility of the monetary damage remedy outlined in *Franks. See Myers v. Gilman Paper Corp.,* 544 F.2d 837, 859 (5th Cir. 1977); *Kizer v. Webster,* 492 F.Supp. 1135, 1149–50 (D.D.C.1980); *Harmon v. San Diego County,* 477 F.Supp. 1084, 1092 (S.D.Cal.1979); *McAleer v. American Tel. & Tel. Co., supra,* 416 F.Supp. at 439–40; *German v. Kipp, supra,* 429 F.Supp. at 1338, n.25; and *see* Note, 26 DePaul L.Rev. 158 (1976); and Stern, *Retroactive Seniority as a Remedy for Title VII Violations: Relief To Newly Hired and Incumbent Employees in Light of Franks v. Bowman,* 22 Loyola L.Rev. 923 (1976). Similarly, in an action for money damages, we are persuaded that an alleged violation of § 1981 cannot be obviated by simple reliance upon an affirmative action plan. Therefore, we hold that appellees' efforts to institute an affirmative action plan do not bar appellant

as a matter of law from seeking a monetary award from the jury for his legal claims.

Our conclusion is tempered with the recognition that allowing a white plaintiff a cause of action for money damages in an appropriate case places employers who are implementing affirmative action plans in potentially awkward positions. *See Telephone Wkrs. v. New Jersey Bell Tel. Co.,* 450 F.Supp. 284, 298 (D.N.J.1977). Nevertheless, to conclude as appellees argue, that an employer who is attempting to implement an affirmative action plan is immune from suit under § 1981 would present a situation of fundamental unfairness. For instance, it is possible that an employer could be implementing an invalid plan, or even if valid, the employer could misapply it in a given situation. To deny any cause of action to a white individual merely because his employer or prospective employer asserts the existence of an affirmative action plan could create the potential for abuse by employers.

Having concluded that appellant is not absolutely barred from asserting his legal claims under § 1981, we must now clarify the relationship between appellant's cause of action and appellees' efforts to institute their affirmative action policies. In our view, appellees' alleged reliance upon their affirmative action plan creates factual questions for the jury both on the issues of the bona fide nature of the plan as well as on the proper implementation of the plan to appellant's application for employment.[21] Thus, appellees' affirmative action plan should be treated as in the nature of an affirmative defense to a charge of racial discrimination under § 1981. To establish

---

**20.** We are generally in agreement with Judge Gesell's opinion in *McAleer v. American Tel. & Tel. Co., supra:*

Apparently common to the various opinions in *Franks* was a recognition of the need to share among the respective parties the burden of eradicating past discrimination and achieving equality of employment opportunities. In particular, it was agreed that courts should attempt to protect innocent employees by placing this burden on the wrongdoing employer whenever possible .... This Court, agreeing with these sentiments, sees

no reason why in equitably distributing the burden among the concerned parties the onus should be shifted from the employers responsible for the discrimination to the blameless third party employee any more than is, as a practical matter, unavoidable. 416 F.Supp. at 440.

**21.** Appellees contended in their brief and at trial that they had implemented a valid affirmative action program and disputed appellant's allegations that he had been told that he was not hired because of his race.

such a defense, the appellees will be required to produce evidence on the components of their affirmative action plan that will support an instruction for the jury regarding the requisite elements of a valid affirmative action plan. *See generally University of California Regents v. Bakke, supra; United Steelworkers of America v. Weber, supra; Franks v. Bowman Transportation Co., supra,* 424 U.S. at 772–73, 96 S.Ct. at 1267; *Detroit Police Officers' Ass'n. v. Young, supra,* 608 F.2d at 696; *Moseley v. Goodyear Tire & Rubber Co.,* 612 F.2d at 191; *Legal Aid Society of Alameda City v. Brennan,* 608 F.2d 1319, 1343 (5th Cir. 1979); *E. E. O. C. v. Contour Chair Lounge Co.,* 596 F.2d 809, 814 (8th Cir. 1979). As a second step, appellees will be required to show that their decision not to hire appellant was based upon a proper implementation of a legitimate affirmative action plan in accordance with its provisions. In this manner, appellees will be able to bring forth evidence of their efforts to institute and effectuate a valid affirmative action plan as well as their desire to advance the desired social goals and objectives of their affirmative action program. In sum, the factual basis of appellees' defense of an affirmative action plan must be thoroughly tested before the appellees can be entitled to an instruction that will establish the defense of a legitimate, properly applied affirmative action plan to a set of factual allegations that would in the absence of such a plan produce a submissible cause of action under § 1981.

We realize that this appeal posits the difficult problem of reverse discrimination in the context of appellant's Seventh Amendment right to a jury trial. Nevertheless, we believe that the foregoing accommodation between the strongly competing interests presented in this appeal will allow for a full airing of this controversy. Appellant will not be prevented from attempting to establish the elements of a § 1981 cause of action and the appellees will be able to attempt to demonstrate the de-fense of a proper application of valid affirmative action policies to appellant's application for employment. We are persuaded that this procedure will afford the parties the fairest framework in which to present their case to the jury.

### III.

Lastly, appellees argued that there is no cause of action for the retaliation appellant alleges under § 1981.[22] Appellees' theory is essentially in two parts. First, appellees contend that there may be no racial connection between an applicant's complaint to the EEOC and the alleged retaliation. Second, appellees contend that the sole avenue to redress retaliation charges in an employment context is Section 704(a) of Title VII. Appellees reason that to allow a claim of retaliation against employers pursuant to § 1981 would subvert the procedural mechanisms established within Title VII to address retaliatory claims.

We do not accept appellees' contention that a retaliatory action against a prospective employee for attempting to enforce rights under § 1981 might not be based on *any* racial discrimination. While it is conceivable that an applicant could incorrectly believe that he or she was the victim of racial discrimination prompting the filing of a complaint, a retaliatory response by an employer against such an applicant who genuinely believed in the merits of his or her complaint would inherently be in the nature of a racial situation. *See Winston v. Lear-Siegler, Inc.,* 558 F.2d 1266 (6th Cir. 1977). Judicial recognition of appellees' distinction could lead courts into the factual mire of determining whether a retaliatory act was based purely on non-racial criteria. In any event, to deny appellant a cause of action for retaliatory acts resulting from pursuing a claim under § 1981 would have the effect of giving "impetus to the perpetuation of racial discrimination." *Garcia v. Rush-Presbyterian-St. Luke's Medical Cen-*

---

**22.** It appears that the district court concluded that there is a cause of action for retaliation under § 1981, but held against appellant on the issue. *See* Memorandum Opinion, filed January 7, 1980; and Memorandum, filed November 8, 1977.

ter, 80 F.R.D. 254, 266 (N.D.Ill.1978); accord, *Winston v. Lear-Siegler, Inc., supra; Ragheb v. Blue Cross & Blue Shield of Michigan,* 467 F.Supp. 94, 95–6 (E.D.Mich. 1979); *Fralin & Waldron, Inc. v. County of Henrico, Va.,* 474 F.Supp. 1315, 1322 (E.D. Va.1979); *Liotta v. National Forge Co.,* 473 F.Supp. 1139, 1145–46 (W.D.Pa.1979); *McClain v. Mack Trucks, Inc.,* 81 F.R.D. 730, 733 (E.D.Pa.1979); *National Organization for Women v. Sperry Rand Corp.,* 457 F.Supp. 1338, 1346 (D.Conn.1978); *Strozier v. General Motors,* 442 F.Supp. 475, 480 (N.D.Ga.1975), *appeal dismissed,* 584 F.2d 755 (5th Cir. 1978); and *see generally Des Vergnes v. Sukonk Water Dist.,* 601 F.2d 9 (1st Cir. 1979); *DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306 (2d Cir. 1975); *Windsor v. Bethesda General Hospital,* 523 F.2d 891 (8th Cir. 1975); and *Cubas v. Rapid Am. Corp., Inc.,* 420 F.Supp. 663 (E.D.Pa.1976).

Appellees rely heavily on the recent Supreme Court decision in *Great American S. & L. Assn. v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), for their argument that the sole remedy for retaliation claims in a race discrimination conflict is Title VII. *Novotny* held that the rights created by Title VII could not be asserted through 42 U.S.C. § 1985(c). The Supreme Court reasoned that since § 1985(c) created no substantive rights and is merely a remedial provision, to allow a claim under § 1985(c) based upon a right created by Title VII would allow a complainant to avoid "most if not all of [the] detailed and specific provisions of [Title VII]." *Id.* at 375–76, 99 S.Ct. at 2350–2351. Similarly, appellee argues that because appellant apparently failed to file his claim for retaliation with the EEOC in a timely fashion, pursuit of a § 1981 retaliation claim at this juncture would thwart the procedural mechanisms of Title VII. We do not agree.

Section 1981 creates substantive rights of its own that are redressable quite apart from Title VII. *See Johnson v. Railway Express Agency, supra,* 421 U.S. at 457–61, 95 S.Ct. at 1718–1720; and *Liotta v. National Forge Co., supra,* 473 F.Supp. at 1146. The Supreme Court in *Novotny* rec-

ognized this distinction in reviewing the effect of "contemporary legislation" on the 19th century Civil Rights Acts. "... [W]e held that the passage of Title VII did not work an implied repeal of the substantive rights to contract conferred by the same 19th century statute and now codified at 42 U.S.C. § 1981." *Great American S. & L. Assn. v. Novotny, supra,* 442 U.S. at 377, 99 S.Ct. at 2351 (*citing Johnson v. Railway Express Agency, supra* ). As Title VII and § 1981 involve two independent causes of action, the procedures that are a part of Title VII enforcement do not affect the ability of appellant to proceed with his § 1981 claims.

Therefore, we hold that a § 1981 cause of action encompasses appellant's allegations of retaliatory conduct by the appellees following the filing of appellant's claim for racial discrimination with the EEOC.

For the foregoing reasons, the judgment of the district court is reversed and this cause is remanded to the district court for a jury trial not inconsistent with this opinion.